**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LACEBARK, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 12-cv-00746-D |
| | § | |
| SAKATA SEED AMERICA, INC. | § | |
| | § | |
| Defendant. | § | |

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT THEREOF


Martin G. Ozinga, OBA #13890
Jennifer M. Ventura, OBA #19888
PHILLIPS MURRAH, P.C.
101 N. Robinson, Thirteenth Floor
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
Email: mgozinga@phillipsmurrah.com
Email: jmventura@phillipsmurrah.com
*Attorneys for Plaintiff*

Plaintiff Lacebark, Inc. ("Lacebark") respectfully submits its Response to Defendant Sakata Seed America, Inc.'s Motion and Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction. In support thereof, Lacebark would show the Court as follows:

## INTRODUCTION

In 1999, Lacebark obtained U.S. Trademark Registration No. 2,273,918 (hereinafter the "Registration") for the mark "DYNAMITE" (hereinafter the "Mark") in connection with the production and sale of crape myrtle flowering plants. Despite Lacebark's Registration, which was granted incontestability status by the United States Patent & Trademark Office in 2005, Defendant Seed America, Inc. ("Sakata") has admittedly – and unlawfully – used the Mark in connection with its sale of flowering plants, more specifically pansy seed and pansy plants (hereinafter the "Infringing Product"). Lacebark was therefore compelled to initiate the instant action in order to protect the Mark and its Registration.

## JURISDICTIONAL FACTS

1. Defendant Sakata Seed America, Inc. ("Sakata") is a worldwide distributor of both flowering and vegetable plants and seeds. *See generally* www.sakata.com and www.sakataornamentals.com.

2. By its own admission, Sakata sells flowering plants under the mark "DYNAMITE" (hereinafter the "Infringing Product"). *See*

www.sakataornamentals.com/index.cfm/fuseaction/index.cfm/fuseaction/plants.plantdetail/plant_id/3393/index.htm, attached hereto as Exhibit 1.

3. Sakata sells the Infringing Product through "distributors and brokers located throughout the United States, Canada, Australia/New Zealand, Mexico, Central America and South America for your convenience." *See* www.sakataornamentals.com/index.cfm/fuseaction/distrbutors.main/index.htm, attached hereto as Exhibit 2.

4. In turn, Sakata's worldwide distributors sell the Infringing Product to growers who then sell the Infringing Product to retail garden centers. *See* ¶ 8 of the Declaration of Corinne Marshal, Dkt. No. 20.

5. Sakata's Infringing Product can be found in in Oklahoma and Oklahoma City. *See* Declarations of Carl Whitcomb, Robert Miller and Frank McDonald, attached hereto as Exhibits 3 – 5, respectively.

6. Sakata maintains a website, www.sakataornamentals.com, which provides a telephone number, and email submission access in which anyone in the nation can direct product inquiries. It also provides a customer login to purchase its products and a list of distributors from whom an individual may contact for ordering its products.

7. One of the Sakata distributors identified is Ball Horticultural. *See* www.sakataornamentals.com/index.cfm/fuseaction/distributors.main/index.htm, attached hereto as Exhibit 2.

8. Ball Horticultural sells the Infringing Product to Oklahoma garden centers including, but not limited to, TLC Florist & Greenhouses, located in Edmond, Oklahoma. *See* Declaration of Frank McDonald, attached hereto as Exhibit 5.

9. Sakata has admittedly sold products directly to Oklahoma this year, as well as each of the preceding two years (2010, 2011 and 2012). *See* ¶ 10 of the Declaration of Corinne Marshall, Dkt. No. 20.

10. Advertisements for the Infringing Product are targeted to Oklahoma. *See* ¶¶ 8 and 9 of the Declaration of Whitcomb, attached hereto as Exhibit 3.

## ARGUMENT AND AUTHORITIES

Sakata moves the Court to dismiss this action pursuant to Federal Rule Civil Procedure 12(b)(2). "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 – 58 (10th Cir. 2008).

> The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must preset a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable."

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Although a plaintiff bears the burden of establishing jurisdiction over a nonresident defendant, in the preliminary stages of litigation this burden is "light." *Wenz*

*v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Moreover, "[w]hen evaluating the prima facie case, the court is bound to resolve all factual disputes in favor of the plaintiff in determining whether he has made the requisite showing." *AST* at 1058. *See also Bootenhoff v. Hormel Foods Corp.*, CIV-11-1368 (W.D. Okla. 2012) (wherein this Court explained "If the parties submit conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor.").

In order to obtain personal jurisdiction over Sakata, Lacebark must show that "jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citations omitted). Oklahoma's long-arm statute provides "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." OKLA. STAT. tit. 12, § 2004(F). Accordingly, "the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc.*, 205 F.3d at 1247.

Personal jurisdiction over a nonresident defendant is permitted under the Due Process Clause "so long as there exist minimum contacts between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The "minimum contacts" standard may be established by using specific jurisdiction or general jurisdiction. *Intercon, Inc.*, 205 F.3d at 1247.

### A. SAKATA IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN OKLAHOMA.

A plaintiff satisfies minimum contacts under the specific jurisdiction requirement by showing that "(1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state … and (2) the litigation results from alleged injuries that arise out of or relate to those activities." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citations omitted).

When a corporation "purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's in personam jurisdiction even if it has no physical presence in the State." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). Personal jurisdiction exists over a nonresident defendant who places products into the stream of commerce with the expectation that those products will be purchased by a consumer in the forum state.

> The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World-Wide Volkswagen*, 444 U.S. at 297 – 98.

Intellectual property actions present unique considerations because the mere placement of an infringing product into the market place constitutes a tort. *See e.g., Systems Designs, Inc. v. New Customware Co., Inc.*, 248 F.Supp.2d 1093, 1097 (D. Utah 2003) ("Trademark infringement is a tort."). As a tort, trademark infringement creates personal jurisdiction in the state in which injury occurs. *See Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 411 – 412 (7th Cir.

1994) ("By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana. …the state in which the injury occurs is the state in which the tort occurs, and someone who and commits a tort in Indiana should, one might suppose, be amenable to suit there.") and *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir. 1991) (applying South Dakota's long-arm statute "to the fullest extent permitted by constitutional due process considerations.").

In *Dakota Industries*, the Eighth Circuit found personal jurisdiction for plaintiff's trademark infringement action when the infringing products were found in the state of the plaintiff's principal place of business. Even though defendant alleged the marketing of infringing products in the forum state "resulted solely from the unilateral actions of others," the Eighth Circuit reasoned jurisdiction was proper because "the fact that some of the 'passing off' occurred in [forum state], along with the fact that [plaintiff's] principal place of business is in [forum state], demonstrates that [defendant's] actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there as required by *Calder*. *Dakota Industries*, 946 F.2d at 1391. "[T]here can be no serious doubt after *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984), that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).

Similarly, the Federal Circuit Court of Appeals has held a defendant's intentional placement of an infringing product into an established chain of commerce with a

termination point in the forum state is clearly sufficient to establish personal jurisdiction. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In *Beverly Hills*, the plaintiff alleged that the foreign defendant was shipping ceiling fans into Virginia that infringed upon the plaintiff's patents. *Id*. at 1560. The defendant challenged personal jurisdiction alleging it had no assets or employees located in Virginia, did not have a license to do business in Virginia and did not directly ship the alleged infringing fan into Virginia. *Id*. The plaintiff responded with an affidavit by an investigator who purchased one of fifty-two of the infringing fans being sold at a nationwide retail store in Virginia. *Id*.

Finding personal jurisdiction, the Federal Circuit expressly acknowledged that this evidence could demonstrate that the defendant intentionally formed a distribution channel with the retailer and the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was Virginia. *Beverly Hills*, 21 F.3d at 1564. The Court went on to explain:

> Defendants argue that their contacts with Virginia were insufficient to give them warning that litigation in Virginia might ensue. We disagree. ***The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction***.

*Beverly Hills*, 21 F.3d at 1565 (emphasis added). *See also Motorola, Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349 (D. Del. 1999) (finding personal jurisdiction and rejecting defendant's arguments that because it merely made a component part, it could exercise no control "over the activities of its licensees and their sub-licensees" of the distribution network.).

Finally, this Court has previously addressed a virtually identical factual scenario to the one at issue and found specific jurisdiction over the defendant in an alleged patent infringement action. *Advanced Card Technologies, Inc. v. Harvard Label Inc.*, Case No. CIV-07-1269-D, 2008 WL 4534117 (W.D. Okla. 2008). In *Advanced Card*, the defendant Harvard Label, like Sakata, submitted affidavits and arguments to show that it "does no business and has no customers in Oklahoma, has not specifically targeted any advertising or marketing materials to Oklahoma residents and does not conduct online transactions or sales through its internet website." *Id*. at *1. *See also* ¶¶ 3, 4 and 4 of the Declaration of Corinne Marshall, Dkt. No. 20. Also like Sakata, Harvard Label operated a nationwide retail distribution network that included Oklahoma and that sold its products to consumers in Oklahoma. *See Advanced Card* at *1, ¶ 6 of the Declaration of Corinne Marshall, Dkt. No. 20, Declaration of Robert Miller and Declaration of Frank McDonald, attached hereto as Exhibits 2 and 3, respectively.

Finding specific personal jurisdiction, this Court reasoned that because the infringing products were sold in Oklahoma and Harvard Label "distributes its products in a way that results in the regular and anticipated flow of products to Oklahoma," the plaintiff "has made a sufficient showing of personal jurisdiction under the stream-of-commerce theory approved by the concurring opinions in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)." *Advanced Card* at *2. This Court then went on to note that the Federal Circuit's decision in *Beverly Hills*, discussed *supra*, was "instructive" with respect to whether "additional conduct" of the defendant was required. *Advanced Card* at 2.

Quoting *Beverly Hills* extensively, this Court noted:

> The [*Beverly Hills*] court found specific jurisdiction in the forum based on allegations and affidavits "that defendants purposefully shipped the accused [product] into [the forum state] through an established distribution channel" and the "action for patent infringement is alleged to arise out of these activities." *Id*. at 1565. The finding was based on the following "necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id*. at 1566. The connection to the forum state included an ongoing, intentional relationship (through intermediaries) with a retailer in the forum and sales of the products to the retailer's customers. *Id*. at 1564. The court observed: "From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and [the retailer] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was [the forum state.]" *Id*.

*Advanced Card* at *3. Thus, Harvard Label's placement of infringing products into an established distribution network with nationwide distribution was sufficient to permit this Court to exercise personal jurisdiction. *Id*.

Like *Advanced Card*, this case involves the placement of an infringing product into the stream of commerce through an established distribution network. *See* ¶¶ 6 and 8 of the Declaration of Corinne Marshall, Dkt. No. 20. The evidence on the established distribution channels presented by Lacebark clearly suggests that Sakata "distributes its products in a way that results in the regular and anticipated flow of products to Oklahoma." *Advanced Card* at *2. The sale of ***at least*** 17,210 of the Infringing Product into the State of Oklahoma over the prior three years unequivocally demonstrates that Sakata "knew, or reasonably could have foreseen, that a termination point of the channel was [Oklahoma]." *See Beverly Hills Fan*, 21 F.3d at 1564, Declaration of Robert Miller,

attached as Exhibit 4 (stating Southwood Landscape Nursery has purchased at least 16,650 plugs[1] of the Infringing Product over the prior three years) and Declaration of Frank McDonald, attached as Exhibit 5 (stating Oklahoma City's TLC Florist & Greenhouses purchased 560 plugs of the Infringing Product in 2012). Finally, Sakata's admitted direct shipment of other products to Oklahoma this year, as well as the past two years (2010, 2011 and 2012), plainly reflects Sakata's knowledge that Oklahoma is an expected termination point of Sakata's established distribution channel. *See* ¶ 10 of the Declaration of Corinne Marshall, Dkt. No. 20.

By choosing to infringe on the Mark by using "DYNAMITE" in connection with seeds and flowering plants, Sakata clearly "assumed the risk of injuring valuable property" located in Oklahoma. *See Indianapolis Colts*, 34 F.3d at 411 – 412. Lacebark's principal place of business in Stillwater, Oklahoma is the epicenter of all harm emanating from Sakata's trademark infringement because in intellectual property cases, "the harm is focused on the state in which the plaintiff resides." *Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F.Supp.2d 1271, 1292 (N.D. Okla. 2011) (citations omitted).

Moreover, even if "additional conduct" was required, Sakata's website – which contains the Infringing Product – "serves as a channel for providing regular advice to customers in the forum State" and provides the "something more" in proving that due process permits the exercise of personal jurisdiction under the stream of commerce

[1] A plug plant is a small plant that is grown in a greenhouse until it has reached an adequate size for transplanting to a garden.

theory. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp*., 395 F.3d 1315, 1323 – 24 (Fed. Cir. 2005). Sakata's website provides in part "Sakata has distributors and brokers located throughout the United States, Canada, Australia/New Zealand, Mexico, Central America and South America for your convenience. Please contact the company of your choice for ordering information." *See* www.sakataornamentals.com/index.cfm/useaction/distributors.main/index.htm, attached hereto as Exhibit 2. The site then provides direct contact information, including telephone number and email contact. *Id*.

Sakata has purposefully targeted Oklahoma and its resident corporation (Lacebark) more than enough to grant personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2857 n.5 (2011) ("When a defendant's act outside the forum causes injury in the forum, by contrast, a plaintiff's residence in the forum may strengthen the case of the exercise of *specific jurisdiction*.").

## II. THIS COURT'S EXERCISE OF PERSONAL JURISDICTION OVER SAKATA IS WITHIN THE BOUNDS OF DUE PROCESS.

Sakata's contacts with Oklahoma shifts the burden to Sakata to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). When making this determination, courts consider:

> (1) The burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Pro Axess, Inc. v. Orlux Dist., Inc.*, 428 F.3d 1270, 1279 – 1280 (10th Cir. 2005) *quoting OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

### A. THERE IS MINIMAL BURDEN ON SAKATA TO LITIGATE IN OKLAHOMA.

Sakata has wholly failed to allege any burden to litigate in Oklahoma. Perhaps Sakata elected to forgo this argument entirely as the Tenth Circuit has recognized: "We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1212 – 13 (10th Cir. 2000) (citations omitted). Indeed, "in this age of instant communication, *Oxford First Corp.* [*v. PNC Liquidating Corp.*,] 372 F.Supp. [191,] 201 [(E.D. Pa. 1974)], and modern transportation, the burdens of litigating in a distant forum have lessened, *Republic of Panama* [*v. BCCI Holdings (Luxembourg) S.A.*], 119 F.3d [935,] 947 - 48 [(11th Cir. 1997)]." *Peay*, 205 F.3d at 1213.

In this instance, Lacebark is a family-owned Oklahoma corporation. *See* Whitcomb Declaration, attached hereto as Exhibit 3. Sakata, on the other hand, is a large corporation operating throughout the United States and the world. *See* www.sakata.com. It would certainly be disingenuous to suggest that Sakata does not have the resources to access adequate counsel in Oklahoma. *See e.g.*, ¶ 10 of the Declaration of Corinne Marshall, Dkt. No. 22 (admitting that Sakata has shipped product to Oklahoma in each of the prior three years). As an international corporation, Sakata's infringement activities have a significant impact far beyond the borders the State of California including, but not limited to, Oklahoma where the economic brunt of Lacebark's injuries are felt. *See*

*Outdoor Channel, Inc.*, 826 F.Supp.2d at 1292 (stating in intellectual property cases, "the harm is focused on the state in which the plaintiff resides.").

### B. OKLAHOMA HAS A STRONG INTEREST IN PROTECTING ITS CITIZENS.

It is well-settled that "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI*, 149 F.3d at 1096. Here, Lacebark is an Oklahoma corporation that maintains its principal place of business in Stillwater, Oklahoma. *See* Whitcomb Declaration, attached hereto as Exhibit 3. In addition, witnesses that will attest to the trademark infringement and the harm suffered by such an infringement are located in Oklahoma. *See* Whitcomb Declaration, Miller Declaration and McDonald Declaration, attached hereto as Exhibits 3 – 5, respectively. Thus, Oklahoma clearly provides a convenient and effective forum by which Lacebark can "seek redress" for injuries caused in Oklahoma by international defendant Sakata.

## III. A COMBINATION OF ALL FACTS PROVIDES THIS COURT A SUFFICIENT BASIS FOR PERSONAL JURISDICTION.

"The court must, of course, consider the contacts with the forum state collectively rather than isolation, as the particularized inquiry standard implies." *System Designs, Inc. v. New CustomWare Co., Inc.*, 248 F.Supp.2d 1093, 1104 (D. Utah 2003). *See also Mamani v. Bustamante*, 547 F.Supp.2d 465, 471 (D. Md. 2008) (stating "however, the Court believes that such contacts, when considered collectively, are sufficient to establish personal jurisdiction") and *AutoNation, Inc. v. Whitlock*, 276 F.Supp.2d 1258, 1263 (S. D. Fla. 2003) (stating "In making this finding, the Court notes that it is the [defendant's]

activities considered collectively and over the five year period between 1998 and 2003, as opposed to any single activity alone, that establishes personal jurisdiction.”).

In this instance, Sakata has admittedly shipped product to Oklahoma in each of the prior three years (2010, 2011 and 2012). *See* ¶ 10 of the Declaration of Corinne Marshall, Dkt. No. 22. There is no reason to believe that Sakata will not continue to ship products directly to Oklahoma. In addition, Sakata has advertised the Infringing Product in periodicals targeted to Oklahoma. *See* ¶ 9 of the Declaration of Carl Whitcomb, attached hereto as Exhibit 3.

Finally, it is undisputed that Sakata has placed Infringing Product into an established distribution channel with a termination point of Oklahoma. Sakata admittedly sells the Infringing Product to Ball Horticultural, who in turn sells the Infringing Product to TLC Florist & Greenhouses in Edmond, Oklahoma. *See* www.sakataornamentals.com/index.cfm/fuseaction/distributors.main/index.htm, attached hereto as Exhibit 2 and McDonald Declaration, attached hereto as Exhibit 5. Taking the admitted direct shipment of product to Oklahoma, Sakata's purposeful placement of the Infringing Product into an established distribution channel with an established termination point in Oklahoma and Sakata's advertisements in Oklahoma, this Court should find personal jurisdiction over Sakata.

## IV. In the Alternative, Lacebark is Entitled to Take Jurisdictional Discovery.

The Tenth Circuit has explained:

> When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.

> *Sizova* [*v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002)] While the district court has broad discretion in determining whether to permit jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary.

*Health Grades, Inc. v. Decatur Memorial Hosp.*, 190 Fed.Appx. 586, 589 (10th Cir. 2006).

In this instance, Lacebark's jurisdictional allegations could easily be supplemented through limited jurisdictional discovery. Importantly, Lacebark would have the opportunity to discovery Sakata distributors other than Ball Horticultural who have directly shipped the Infringing Product to Oklahoma. Lacebark would also be able provide more examples of Oklahoma garden centers who sell the Infringing Product. Accordingly, Lacebark is entitled to limited discovery related to Sakata's jurisdiction allegations should there be a question as to the veracity of the screenshots attached to this Response.

## **CONCLUSION**

Sakata is subject to personal jurisdiction in this district by its purposeful placement of the Infringing Product into an established distribution network in which Sakata knew, or reasonably could have foreseen that a termination point of the channel was Oklahoma. Moreover, Sakata has wholly failed to allege any burden to litigate in Oklahoma. Accordingly, Lacebark respectfully requests the Court deny Sakata's Motion to Dismiss for Lack of Personal Jurisdiction. In the alternative, Lacebark is entitled to take jurisdictional discovery to further confirm Sakata's presence in Oklahoma.

Respectfully submitted,

***s/Jennifer M. Ventura***

Martin G. Ozinga, OBA #13890
Jennifer M. Ventura, OBA #19888
PHILLIPS MURRAH, P.C.
101 N. Robinson, Thirteenth Floor
Oklahoma City, OK  73102
Telephone:  (405) 235-4100
Facsimile:  (405)  235-4133
Email: mgozinga@phillipsmurrah.com
Email: jmventura@phillipsmurrah.com

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2012, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Joseph P. Titterington
jtitterington@dunlapcodding.com
Jill Swank
jswank@dunlapcodding.com
DUNLAP CODDING, P.C.
1601 NW Expressway, Suite 1000
Oklahoma City, Oklahoma 73118

- and -

David S. Elkins
David.Elkins@squiresanders.com
Christopher D. Mays
Christopher.Mays@squiresanders.com
SQUIRE SANDERS (US) LLP
600 Hansen Way
Palo Alto, California 94304

***Attorneys for Defendant Sakata Seed America, Inc.***

***s/Jennifer M. Ventura***